UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LINDA LONG, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-1283 |
| § | |
| OMNI HOTELS MANAGEMENT § | |
| CORPORATION, *et al*, § | |
| § | |
| Defendants. § | |

### ORDER

The Court has before it the Defendants' Motion for Sanctions (Doc. No. 356) and the Memorandum of Respondent Linda Long in Support of her Opposition to Motion for Sanctions (Doc. No. 365). This Court grants the motion, but not the relief requested by the Defendants.

### I.

Defendants' motion argues and supports with incontrovertible evidence, which this Court accepts, that Plaintiff Linda Long was untruthful on multiple occasions during the pendency of her suit against Defendants. She falsified her interrogatory answers multiple times, and she twice testified falsely at trial (once in a prior trial that resulted in a mistrial and in the most recent trial herein). These fabrications were on a critical issue.

### II.

The following are examples of numerous times and ways she failed to answer truthfully.[1]

**A.    Plaintiff's 2016 Deposition**

On March 3, 2016, Defendant deposed Plaintiff. Of particular significance to this motion, Plaintiff perjured herself regarding her prior lawsuit and her employment at Caesars

---

[1] The Court quotes the examples listed in Defendant's motion.

Palace:

> Q. Have you ever been a party to a lawsuit other than this one?
> A. No.
>
> * * *
>
> Q. And other than the charge of discrimination you filed against Omni, have you ever filed a charge of discrimination against any other employer?
> A. No.
>
> * * *
>
> Q. Why did you end up leaving Caesar's Palaze [sic]?
> A. They closed it for construction.
> Q. Once the construction in the spa had been completed, did you try to get back on with Caesar's Palace?
> A. I don't remember.
> Q. Is there any reasons why you wouldn't have tried to get on with Caesar's Palace?
> A. I started my own work.

Exhibit A, 2016 Depo. of Plaintiff at 19:22-24; 20:5-8; 41:14-42:1.

That Plaintiff committed perjury at her 2016 deposition is undeniable. Plaintiff was a party in a 1999 lawsuit against Caesars Palace and, in that lawsuit as in this one, she charged her employer with age discrimination and retaliation. Plaintiff also made false factual statements about the circumstances when she left her Caesars employment, since her 1999 complaint in Nevada repeatedly states she was terminated from Caesars Palace. Plaintiff also signed affidavits wherein, under oath, she claimed she was terminated. *Id*. Plaintiff had the opportunity to correct her false testimony after reviewing the transcript of her deposition but did not. While, she changed her testimony, she still intentionally withheld this material information:

> Q. Have you ever been a party to a lawsuit other than this one?
> A. No. I'm not sure if I was a "party" but I was in JP court about an air condition problem with a landlord.

Exhibit D, Plaintiff's 2016 Errata, at 1:7.

### B. Plaintiff's Interrogatory Answer in the Instant Case

Defendant's First Set of Interrogatories, served on February 22, 2016, included the following question:

> 8. With the exception of this lawsuit, have you ever been a party and/or witness to a lawsuit or an administrative proceeding by stating its case number, style, and the court or agency where the case was or is pending; the nature of the case and whether you were a plaintiff, defendant, or another type of party witness; and the final disposition of the case and the name and address of your attorney for each suit or proceeding.

In her verified response, Plaintiff only mentioned a small claims dispute, once again failing to disclose her 1999 lawsuit against Caesars Palace:

> **ANSWER:** I was a defendant in small claims court concerning a dispute about a faulty air conditioner, which the landlord would not repair. There was a hearing before the JP, and the JP ruled that I nevertheless had to pay the landlord his deposit and deal with the air conditioner in a separate action. I decided not pursue any action against the landlord.

Exhibit E, L. Long Discovery answers, at p. 7. She did not mention her lawsuit against Caesars. While less germane to this case, but more pertinent to her propensity to not tell the truth, is the fact that she also failed to list three different bankruptcies she filed in the District of Nevada in 1992, 2000 and 2007.[2]

### C. The 2017 Trial:

At the 2017 trial, Caesars Palace seemed central to Plaintiff's case. Indeed, from the onset of opening argument, Plaintiff's then-counsel, Scott Newar, injected Caesars—and

---

[2] This Court characterizes them as less germane than her prior discrimination case as they presumably do not contain allegations of age discrimination, but the failure to list them is not unimportant. It is certainly additional proof that she was not telling the truth, Moreover, three bankruptcies in 15 years might cause a defense lawyer in Texas to investigate Long's litigation history in Nevada which would have led to the discover of the Caesars Palace suit. *See In re Linda M. Long*, 92-20544 (Dist. of Nevada); *In re Linda Marie Long*, 00-13720 (Dist. of Nevada); *In re Linda Marie Long*, 07-14503 (Dis. of Nevada).

Plaintiff's employment there— into the trial:

> Mr. Newar (Long's Counsel): In 1984, Linda moved to Las Vegas to work at Caesars Palace, the famous Caesars. She studied and worked there under one of, then, two of the – the preeminent makeup artists. They were Academy Award-winning makeup artists, and she treated some of the world's most famous celebrities, names that you will all recognize: Celine Dion, Reba McEntire, Diana Ross, Ivanda Holyfield, Sugar Ray Leonard, Oscar De la Hoya. She worked on movies like Rain Man, Tome Hands, Tom Cruise – I mean, Dustin Hoffman and Tom Cruise. She worked on red-carpet events for the stars. That's how good she was. In 1998, Linda—Caesars closed down its spa for reconstruction, and when it reopened, it hired back only the young makeup artists.

Exhibit F, Newar Opening, Docket No. 233, at 103:13-25.

She then testified on direct examination:

> Q.  And why did you leave Caesars?
> A.  They closed it for reconstruction.

Plaintiff's 2017 testimony, at 168:5-6. A statement clearly contrary to her sworn affidavits in Nevada.

> Q.  Now you didn't bring any claim at that time against Caesars, did you?
> A.  No, I did not.
> Q.  Why didn't you take action at that time? What was your circumstance?
> A.  Well, my children – I still had a son in high school, and my young daughter had a daughter, and I helped to raise her. And – when I talk about my family, I get emotional, so please just bear with me.

Plaintiff's 2017 testimony at 168:22-169:5.

She had brought a case against Caesers and this statement that she had not is, as we say in Texas, "a downright lie." Her fabrications about Caesars Palace were emphasized to the jury in closing by Mr. Newar:

> Now, Linda had experienced this age discrimination once before when she was at Caesars in Las Vegas 20 years ago when the company shut down its spa there and hire—then hired back, when it reopened, only the younger therapists. Now, back then, Linda told you, she was too afraid to speak up and to stand up against the discrimination because she had a family to raise. She had children, and so she sat

silent, and she moved on. But not this time.

Exhibit H, Newar Closing, Docket No. 238 at 103:24-104:6.

### D. 2019 Trial

On cross-examination, Plaintiff was asked about being a party in other lawsuits. Plaintiff repeatedly denied knowing about her 1999 lawsuit against Caesars Palace:

> Q. . . . Have you ever been a party to a lawsuit other than this one involving Omni?
> A. Not that I know of.
>
> * * *
>
> Q. Okay. Have you ever brought a lawsuit against Caesars Palace?
> A. Not that I know of.
>
> * * *
>
> Q. Are you aware, ma'am, that a judgment was rendered in favor of Caesars Palace in that case saying that your claim was dismissed?
> A. I didn't know anything about that.
>
> * * *
>
> Q. Do you have knowledge that after the Court dismissed it, you appealed it to the Court of Appeals?
> A. No.

Plaintiff's 2019 testimony, Certified Copy of Official Reporter's Transcript of Proceedings of Trial Testimony of Linda Long Volume II for June 13, 2019 at 121:10-15-15:127:1-4.

This questioning took place after a lengthy bench conference during which it became clear to all counsel and the Court that Ms. Long had not been honest. Long was on the witness stand during that conference and perhaps that influenced her to hedge her answers to try to lessen their effect. Yet even these answers were totally incredible as it became clear that not only was she a party to a lawsuit, but that at times she, herself, filed pleadings. For example, in the above excerpt, she claimed not to know of an appeal to the Ninth Circuit Court of Appeals. She made

this claim despite the fact that she authored the "Request for Appeal" *pro se*.

---

LINDA LONG,
    Plaintiff,

v.

CAESARS PALACE CORPORATION,
    Defendant.

Case No. CV-S-99-630-LDG (PAL)

**REQUEST FOR APPEAL**

Please have this correspondence serve as a request for an appeal of the above referenced case. Less than 24 hours ago I was notified that legal counsel, John Peter Lee Ltd. has withdrawn his representation of my case.

I am basing this request on the fact that my attorneys failed to present material evidence and material facts to the court as I instructed. 1) Specifically the names of staff members under 40 years of age still working at Caesars and younger women hired to replace my position. 2) With regard to whistle blower, the outside agencies contacted – Labor Commission and the Nevada State Board of Cosmetology. If a trial is permitted, the witnesses, most who signed affidavits, will verify the clarity of the implied contract or promise of continued employment. Finally, that the charge of harassment found in the original complaint filed April 30, 1999 (Page 5 Paragraph 26) has not been addressed.

Please allow me time to hire Professional Legal Counsel.

Respectfully submitted

DATED this 11th day of April, 2001

*/s/ Linda M. Long*

Linda M. Long

I hereby attest and certify on 5-24-19 that the foregoing document is a full, true and correct copy of the original on file in my legal custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
By: _____ Deputy Clerk
ALANA KAMAKA

---

At the 2019 trial, Ms. Long confirmed that the above letter contained her signature and that it had her address on it. She represented herself on the appeal to the Ninth Circuit. *Long v. Caesars Palace Corp.*, 23 F. Appx 697 (9th Cir. 2001). Her claim in the 2019 trial that she did not know of the lawsuit, or was unaware it had been filed, or that she was a party was totally incredible and can only be the result of bad faith.

This Court, in over seventeen years of being on the bench, has never presided over (or even heard of) a more blatant case of trying to perpetuate a fraud on the jury. In just what is recounted above there are at least seven different false statements made under oath in discovery answers and in the 2017 and 2019 trials.

Judge Hittner, the lawyers, and the jury no doubt relied upon this false testimony in 2017 as it is evident from the transcript that it was a major theme of the Plaintiff's presentation. This Court and the jury might have similarly relied upon the lies in the instant 2019 trial, but for the perseverance that the defense counsel displayed in tracking down the truth.

### III.

The Defendant in this case deserves its courts costs. Indeed, the Court reserved the issue of costs in its Final Judgment (Doc. No. 366). These costs amount to $19,210.68. The Court hereby awards that amount for costs. The Court notes that its award of costs is not necessarily the result of its finding of misconduct, but it would have awarded these costs to Omni, the prevailing party, as a matter of course.

The Defendant also seeks its attorneys' fees due to Plaintiff's bad faith. The ADEA calls upon the attorneys' fees statute found in the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 216(b) and 626(b). The FLSA does not provide an award of attorneys' fees to defendants or prevailing parties generally, but only to prevailing plaintiffs. "In the absence of an express provision in the ADEA or FLSA that permits an award of attorney's fees to a prevailing party, the American Rule applies," unless an exception is established. *Kennedy v. Parkview Baptist Sch., Inc.*, 13-478-SCR, 2015 WL 6680872, at *2 (M.D. La. Nov. 2, 2015). "Bad faith is a recognized exception to the rule, and the defendant in an ADEA case must show bad faith on the plaintiff's part for a district court to award attorney[s'] fees to a defendant." *Id.* (citing *Flanagan v. Havertys Furniture Cos, Inc.*, 484 F. Supp. 2d 580-581 (W.D. Tex. 2006); *Fassbender v. Treasure Chest Casino*, No. 07-5265, 2008 WL 170071, *8 (E.D. La. Jan. 16, 2008). Importantly, "the bad faith exception to the American Rule is not limited to suits that are filed in bad faith, but also encompasses bad faith conduct preceding and during the litigation." *Kennedy*,

2015 WL 6680872, at *2 (citing *Roadway Express, Inc. v Piper*, 447 U.S. 752, 766 (1980)); *see also Flanagan*, 484 F. Supp. 2d at 582 ("the bad faith exception does not address conduct underlying the substance of the case; rather, it refers to the conduct of the party . . . during the litigation of the case.").

The Plaintiff's bad faith in her pursuit of this case is undeniable. This Court so finds. Since this award of fees is based upon a finding of bad faith, this Court, using its discretion, hereby finds that the fees awarded should be limited to the fees expended in the portion of the case over which this Court presided. While it is firmly convinced that the falsehoods promulgated by the Plaintiff infected both trials and the entire course of this lawsuit, the Court limits its award to those time periods and proceedings over which it is certain the fee award is justified.

This Court finds the amounts listed below to be both reasonable and necessary for the representation of the Defendant with two exceptions:

| | |
|---|---|
| FEBRUARY 25, 2019 | $3,133.00 |
| MARCH 28, 2019 | $1,693.00 |
| APRIL 29, 2019 | $14,222.50 |
| MAY 24, 2019 | $34,105.24 |
| JUNE 28, 2019 | $122,544.16 |
| JULY 15, 2019 | $135,103.84 |
| **TOTAL ATTORNEY FEES** | **$310,801.74** |

The Court finds the fees mentioned above to be supported by the evidence, but regardless makes the following two exceptions, this Court hereby reduces the overall fee request by $18,427.50—that being the time billed for the "archive timekeeper," because the evidence presented by the supporting affidavits does not explain what an "archive timekeeper" is, why a fee for one was reasonable, or why one was necessary. The Court additionally deducts $18,840

8 / 10

representing approximately one half of the associate billing for trial time. The Court finds the associate billing rate to be reasonable and does not doubt that the associates in question were valuable and contributing members of the defense team. Indeed, at one point, lead counsel gave one of the involved associates the credit for discovering the fact that Long had been involved in civil litigation in Nevada. Nevertheless, given their lack of actual participation in the trial, the Court finds their actual contributions to the trial does not merit the imposition of their entire fees to the Plaintiff. Therefore, the total amount of attorneys' fees awarded against Plaintiff in favor of the Defendant is $273,534.24.

## IV.

Defendant has requested that this Court dismiss this lawsuit to prevent appeal. There is no order this Court can enter that could deprive a person of her appellate rights. Indeed, even if this Court dismissed the case as requested, that order, itself, would be appealable.

## V.

While it may not provide recompense to the Defendant, this Court hereby gives notice to all parties that it is informing the United States Attorney's office for this District of the proceedings and conduct of the Plaintiff. This Court has never taken this action before, but it has never encountered a situation like this one where on person has so blatantly tried to perpetuate a fraud on the Court and the parties. This Court will not attempt to (and cannot) influence what action that office will take, if any, but this Court finds this step is necessary to protect the integrity of the judicial process.

In conclusion, this Court grants in part and denies in part Defendant's Motion for Sanctions (Doc. No. 356), and its Motion for Attorneys' Fees (Doc. No. 371). It awards against the Plaintiff and in favor of the Defendant attorneys' fees in the amount of $273,534.24 and costs

in the amount of $19,210.68.  All relief not awarded herein is hereby denied.

SIGNED at Houston, Texas, this \_\_\_22nd\_\_\_ day of August 2019.

                                                 ANDREW S. HANEN
                                        UNITED STATES DISTRICT JUDGE